## EMIL WERNER V. M. A. BERGMAN.

MORTGAGEE, *Deeming Himself Insecure; Replevin.* In an action of re-
plevin, brought by the mortgagee of personal property, to recover the
possession of the property from the mortgagor, before the debt secured
by the mortgage had become due, it was shown that there was a stipu-
lation contained in the mortgage, to the effect that the mortgagor should
retain possession of the mortgaged property until the mortgagee might
"deem himself insecure;" and it was further shown that, prior to the
commencement of the action, the mortgagee did "deem himself inse-
cure," and demanded the property of the mortgagor, who refused to de-
liver it to the mortgagee; and evidence was also introduced tending both
to prove and to disprove the fact that the mortgagee had reasonable
grounds for believing himself to be insecure; and sufficient evidence was
introduced to show that a timid and fearful man, placed in the situation
of the mortgagee, might deem himself insecure; and no evidence was
introduced tending to show that he did not in fact believe himself
to be insecure. *Held,* That the mortgagee was entitled to recover in the
action; that it was not necessary for the mortagee, in order to recover, to
show *that he had reasonable grounds* for deeming himself to be insecure;
but all that was necessary was, to show that in fact he did deem himself
insecure.

*Error from Sedgwick District Court.*

REPLEVIN brought by *Werner* against *Bergman.* Trial at
the May Term, 1881, of the district court, and judgment for
defendant. The plaintiff brings the case here. The facts
appear in the opinion.

*H. G. Ruggles,* for plaintiff in error.

*E. Hill,* and *Stanley & Wall,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin brought
by Emil Werner against M. A. Bergman, to recover certain
goods and chattels used by the defendant in keeping a res-
taurant. The facts of the case appear to be substantially as
follows: On July 2, 1879, Mrs. M. A. Bergman was keeping
a restaurant in Wichita, Kansas. On that day she borrowed
some money of the plaintiff, Werner, and gave her promis-

sory note therefor. The note was dated July 2, 1879, was for the sum of $125, and was due in sixty days after date. She also gave a chattel mortgage to the plaintiff upon all her property used in keeping the restaurant, as security for the payment of the note. The chattel mortgage contained among others the following provisions:

"If default shall be made in the payment of said sum of money, or any part thereof, or the interest thereon, at the time or times when by the condition of the said notes the same shall become payable, or if the said party of the second part shall at any time deem himself insecure, then and thenceforth it shall be lawful for the said party, his executors, administrators or assigns, or his authorized agents, to take said goods and chattels wherever the same may be found, and dispose of the same at public auction or at private sale, and after satisfying the sums of money and interest hereby secured, and all necessary and reasonable costs, charges and expenses incurred, out of the proceeds of sale, he shall return the surplus to said party of the first part, or her legal representatives; and until default be made as aforesaid, or until such time as the said party of the second part shall deem himself insecure, as aforesaid, the said party of the first part to continue in the peaceful possession of all the said goods and chattels."

On July 29, 1879, Werner, feeling that he was not safe in leaving the mortgaged property any longer in the possession of Mrs. Bergman, demanded the possession thereof, which was refused by her, when he brought this action of replevin to recover the possession of the property. The defendant answered, denying generally all the allegations of the plaintiff's petition, and demanded a return of the property, and asked for damages in the sum of $1,000. The plaintiff retained the possession of the property until after the note became due, and then sold the same at public auction for $70, and applied the proceeds thereof in part satisfaction of the note and mortgage.

In May, 1881, the case was tried before the court and a jury, and the jury found a verdict in favor of the defendant and against the plaintiff for $225, as the value of the property; $28.85 for its detention, and $50 as exemplary dam-

ages. The plaintiff filed a motion for a new trial, upon various grounds, which motion was overruled by the court, and judgment was rendered in favor of the defendant and against the plaintiff for the full amount of the verdict, to wit: $303.85. The plaintiff then brought the case to this court, claiming that the court below erred in the following particulars: First, in overruling objections made by the plaintiff to the introduction of certain evidence offered by the defendant; second, in giving certain instructions to the jury; third, in overruling the plaintiff's motion for a new trial upon the grounds that the verdict of the jury was contrary to law and against the evidence in the case.

As to the first alleged error, it would seem to us that even if it was an error, it was immaterial error.

As to the second alleged error, it would seem to us that the plaintiff hardly saved the same by proper exceptions; and therefore, that he could hardly expect a reversal of the judgment of the court below upon that error alone, provided no other error was committed.

The third ground of error was properly saved, and it seems to us to be material and substantial. The verdict of the jury was undoubtedly against the law and against the evidence. There was nothing whatever in the case authorizing a verdict for exemplary damages. No such malice or wantonness was shown in the case, as would authorize that kind of damages. Besides, it was clearly and conclusively shown that the plaintiff "deemed himself insecure" when he replevied the property in controversy. Probably, however, the jury did not intend to find that the plaintiff did not "deem himself insecure" when he replevied the property; for the case was not tried by the defendant or by the court below upon the theory that the plaintiff had any right to the property, merely because he "deemed himself insecure." The case was tried by the defendant and by the court below upon the theory that before the plaintiff could have any right to take the possession of the property, *he must have reasonable grounds to believe* that in fact he was insecure; and the court below so in-

structed the jury. This then brings us to the question whether the plaintiff had in fact, under the mortgage, the right to take the possession of the property at any time whenever he "deemed himself insecure," whether he had reasonable grounds for so believing or not; or whether he could not take the possession of the property, unless he had reasonable grounds for deeming himself insecure. In Wisconsin, it is held that the mortgagee under such a chattel mortgage, may take possession of the property whenever he deems himself insecure, whether his apprehension of insecurity is well founded or not. (*Huebner v. Koebke*, 42 Wis. 319, and cases there cited; *Cline v. Libby*, 46 Wis. 123; *Evans v. Graham*, 50 Wis. 450, 453, and cases there cited. See also upon this same subject, Jones on Chattel Mortgages, § 431; *Braley v. Byrnes*, 21 Minn. 483; *Boice v. Boice*, 27 Minn. 371; *Hall v. Sampson*, 35 N. Y. 274; *Bailey v. Godfrey*, 54 Ill. 507; *Lewis v. D'Arcy*, 71 Ill. 648; *Botsford v. Murphy*, decided Jan. 1882, by the supreme court of Michigan, 13 Reporter, 338.)

The defendant cites the cases of *Furlong v. Cox*, 77 Ill. 293, and *Davenport v. Ledger*, 80 Ill. 574, as holding a different doctrine. Now it is not clear that these last two decisions are in conflict with the doctrine as held in Wisconsin. In the case of *Furlong v. Cox* there is no evidence that there was in fact any danger, or that there was any reason to suspect any danger, nor did the mortgagee even swear that he had any apprehension that there was danger, and probably he did not have any such apprehension; and therefore the court held that he was not entitled to take the possession of the property, although there was a clause in the chattel mortgage authorizing him to take the possession of the property at any time when he should think the property was in danger of being sold, removed, &c.

In the case of *Davenport v. Ledger*, the mortgagee, on the same day that the mortgage was executed, and within eight hours after its execution, at an unreasonable hour, without previous notice, and from malicious motives, took possession

of the property; and it was held that the taking possession of the property was wrongful, although there was a clause in the mortgage giving him the right to take such possession whenever he should feel himself insecure or unsafe. It does not appear that any evidence was introduced showing that the mortgagee felt himself insecure or unsafe; and under the facts of the case, it seems hardly possible that he could have felt himself insecure or unsafe in so short a time after the mortgage was executed; and other sufficient reasons were shown for his taking the property at that time besides the feeling of insecurity or unsafety. The mortgagee in that case did not wait even eight hours *to elect* to take the property, but *elected* to take it *immediately*, and the property was taken by the constable, who seems to have acted more slowly, within eight hours after the mortgage was executed.

There does not seem to have been any intention on the part of the supreme court of Illinois in these last two cases mentioned, to overrule their previous decisions made in the cases of *Bailey v. Godfrey*, and *Lewis v. D'Arcy*, which previous decisions almost recognize the doctrine as held in Wisconsin.

We think the doctrine as held in Wisconsin is correct; and it is not a hard or unconscionable doctrine; for if it should be held to be so, then our own statutes must be held to be still more hard and unconscionable. Section 15 of the act relating to mortgages, provides as follows:

"SEC. 15. In the absence of stipulations to the contrary, the mortgagee of personal property shall have the legal title thereto, and the right of possession." (Comp. Laws of 1879, p. 557.)

The mortgagor, by having a clause inserted in the mortgage that he shall have the right to the possession of the property until the mortgagee shall deem himself insecure, may secure himself such right, notwithstanding the provisions of the statute, and may retain the possession of the property until the mortgagee shall deem himself insecure. If he wishes to go still further, and retain the possession of the property until the mortgagee shall have *reasonable grounds*

to deem himself insecure, he can insert, or have inserted, a stipulation to that effect in the mortgage; or if he wishes to go still further, and retain the possession of the property until the mortgagee shall become in fact insecure, he can have a stipulation put into the mortgage to that effect. But if he chooses only to have inserted in the mortgage a clause that he shall have the right to the possession of the property until the mortgagee shall deem himself insecure, then he can only retain the property until the mortgagee does in fact deem himself insecure; and he has no right to question the grounds upon which the mortgagee entertains such feelings of insecurity. He cannot say to the mortgagee, "You are unreasonable; you have no right to feel insecure; there are in fact no grounds for such feelings of insecurity." The only question at all material in such a case is, whether the mortgagee does in fact so feel; and if the mortgagee claims that he has such a feeling, and afterward on the trial testifies that at the time he took possession of the property he had such a feeling, and if upon the facts of the case it is possible at all to believe that any person, however timid and fearful he might be, might have had such a feeling, then it should be held that the mortgagee had a right to take possession of the property. It must be remembered that the statute gives the right to the possession of the property absolutely to the mortgagee; and the mortgagor can obtain such right only so far as he secures it by a stipulation to that effect in the mortgage. Now if he stipulates that he shall have the right to the possession of the property only so long as the mortgagee does not deem himself insecure, then he can hold the possession of the property only for that length of time, and he holds it subject absolutely to the feelings of the mortgagee; and he has no right to question the grounds upon which the feelings are founded. If the mortgagor should desire better terms, it is his duty to stipulate for them in the mortgage.

From the evidence in this case, it would seem that there were ample grounds warranting the mortgagee in deeming himself insecure; and he testified on the trial that he did

5—28 KAS.

deem himself insecure; and there was no evidence introduced tending to show that he did not deem himself insecure. Among the things testified to on the trial tending to show that the plaintiff had grounds for believing himself insecure are the following: The plaintiff testified that the defendant agreed to insure the property, but that she never did insure the same, and refused to do so, and claimed that she did not agree to do so, but that the plaintiff himself was to insure the property; that after the execution of the mortgage, and before the plaintiff attempted to take possession of the property, the defendant executed another chattel mortgage upon the same property; that the defendant was running behind in her business, and was not paying the rent for the house in which she was doing business, and that she had been notified by the owner of the house to quit the premises; that the defendant entered into an agreement with another person, by which a saloon was to be put into the restaurant, and this other person was to have a half-interest in the business; and the plaintiff also testified that he thought that some of the property was missing, and that it was all offered for sale. Some of these things were unquestioned facts; others of them were questioned by the defendant.

These were certainly sufficient grounds upon which a timid man might deem himself insecure; and the plaintiff testified that he did deem himself insecure, and that he was afraid unless he took possession of the property, that he would lose all.

We think the verdict of the jury was against the law and the evidence. As before stated, however, we do not think that the jury intended to find that the plaintiff did not deem himself insecure, but under the instructions of the court, they simply intended to find that the plaintiff did not have reasonable grounds upon which to deem himself insecure; and if the verdict was against the law and the evidence, of course the court below erred in overruling the plaintiff's motion for a new trial.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.