J. W. CONNOR, *as Sheriff of Cowley County,* v. W. P. HARDWICK, *as Assignee of the estate of C. W. Ridgeway.*

1. CASES, *Followed.* The cases of *Frankhouser v. Ellett,* 22 Kas. 127; *Werner v. Bergman,* 28 id. 60 ; *Isenberg v. Fansler,* 36 id. 402, followed.

2. CONFLICTING EVIDENCE — *Finding.* Where evidence is conflicting as to whether a mortgagee took actual possession of the property described therein, the finding of the jury is conclusive in favor of the successful party.

3. ASSIGNEE — *Power in Insolvency.* Where the assignee of an estate has full authority to sell the goods and personal property of the estate, and to accept notes with sureties thereon in payment therefor, and such notes, or any part thereof, are not paid when due, the assignee, in the interest of the estate, has full authority to accept a chattel mortgage from the maker of the note primarily liable thereon to secure the payment of the same.

4. CHATTEL MORTGAGE, *Validity of.* Where notes secured by a chattel mortgage represent valid and *bona fide* indebtedness from the mortgagor to the mortgagee, and there is no suggestion that the mortgage is given to secure more than the actual indebtedness, and the

mortgagee takes actual possession of the property under the terms of the mortgage before other creditors of the mortgagor levy thereon, such a mortgage, although a preference in favor of the mortgagee as against other creditors, is valid and binding, and may be enforced to satisfy the lien secured thereby.

*Error from Cowley District Court.*

IN January, 1889, Stow & Hite, a partnership composed of E. B. Stow and Rudolph Hite, were indebted to W. P. Hardwick, assignee of the estate of C. W. Ridgeway, for goods sold by Hardwick to Stow & Hite as such assignee, being goods belonging to his estate. Stow & Hite were at that time engaged in a general merchandising business, at Dexter, Cowley county, in this state, and the goods sold them by Hardwick were a general stock of merchandise. On the 21st day of January, 1889, Stow & Hite executed and delivered to Hardwick, as assignee, their three promissory notes, for $1,026.66, $1,053.33, and $1,066.66, and due in 4, 8 and 10 months from date respectively, each note to bear 12 per cent. interest after maturity, and aggregating $3,146.65, and at the same time they procured other persons to sign the notes as sureties. At the maturity of the first note, it was not paid, and Hardwick was urging them to pay the note, and, when he was unsuccessful in getting the note paid, he demanded additional security. On the 13th day of June, 1889, Stow & Hite gave him a chattel mortgage upon their stock of goods, then situated in Dexter, and being the same goods which Hardwick had sold to them, with other additions. At the time the chattel mortgage was executed, Stow & Hite were, in fact, insolvent. The chattel mortgage contained the following stipulations:

"It is specially agreed that J. C. Hite shall take possession of and sell from said stock, and deposit 80 per cent. of all money received, to be applied on above notes, and the remaining 20 per cent. invested in staple groceries, and such purchases shall belong to the stock and be liable in this mortgage owned entirely by us, without any incumbrance: *Provided*, That if the undersigned shall pay said debt, then this

mortgage shall be void.   And it is hereby agreed, that if default be made in payment of said debt, or any part thereof, or if attempt be made to dispose of or remove said property from Cowley county, or if at any time the payee of said note shall deem the said debt unsafe or insecure, he is hereby authorized to enter upon the premises where the said property may be, and remove and sell the same at public or private sale, with or without notice, and out of the proceeds retain the amount then owing on said debt, with expenses attending the same, rendering to the undersigned the surplus, after the whole of said debt shall have been paid, with charges aforesaid."

Hardwick attempted to file his chattel mortgage for record on June 14, 1889, at 10:30 A. M., in the office of the register of deeds of Cowley county, but the copy which was furnished omitted the words "January 21, 1889," being the date of the notes secured; otherwise the copy was correct in all particulars.   On June 14, 1889, the next day after the chattel mortgage was given, Stow & Hite and J. C. Hite entered into a contract by which they sold the goods, subject to Hardwick's mortgage, to J. C. Hite.   Hardwick knew nothing of this contract until after it was signed.   About one week afterward, J. W. Connor, as sheriff of Cowley county, under and by virtue of two executions and two orders of attachment in favor of creditors and for amounts as follows, to wit:

| | |
|---|---|
| Henry Baden, execution | $264 00 |
| Rindskopf, Stern, Lauer & Co, execution | 287 00 |
| S. Strauss & Co., attachment | 81 47 |
| R. L. McDonald & Co., attachment | 138 40 |

seized and took into his possession the goods in controversy in this action.   W. P. Hardwick then brought his action in replevin against the sheriff for the recovery of the goods, claiming to hold the same under the mortgage, which he alleged was given to him in good faith by Stow & Hite, and that under such mortgage he had at the time of the seizure by the sheriff the actual possession of all of the property.   The contention of J. W. Connor as sheriff was, that the mortgage was fraudulent and void, and that the mortgagee had no possession whatever.   The case was tried by the court and a

jury at the September term for 1889. The trial com-. menced on the 3d day of October, 1889. The jury returned a verdict for Hardwick, and found the value of the goods detained to be $1,850, and the value of his interest to be $2,012.85. Hardwick afterward in open court remitted all over $1,614.05 of the verdict, that being the value of the goods as alleged in his affidavit in replevin. After the commencement of this action, and before the trial, Hardwick sold the remnant of the goods and collected some accounts, and reduced the indebtedness down to the amount found by the jury. Subsequently the court rendered judgment that Hardwick, as assignee, recover from the defendant, J. W. Connor, the immediate return and possession of all the personal properey mentioned and described in the affidavit in replevin, and that, if no delivery or return could be had, then that he recover from Connor the sum of $1,614.05, the value of the property, with 6 per cent. interest thereon, together with costs. Connor, the sheriff, excepted, and brings the case here.

*C. J. Peckham*, and *J. B. Ziegler*, for plaintiff in error:

The petition in this case wholly fails to state a cause of action.

The mortgage under which plaintiff below claims is void in law. It shows upon its face a purpose and design to wholly withdraw from all other creditors of Stow & Hite all of their property, by continuing the business indefinitely, and by using the proceeds of sales in keeping up the stock. Tested by the decisions of our supreme court, this mortgage is void in law. *Rathbun v. Berry*, 49 Kas. 735; *Implement Co. v. Schultz*, 45 id. 52; *Leser v. Glaser*, 32 id. 546.

The plaintiff below alleged in his petition that his mortgage, or a copy thereof, was filed for record, and that he had the actual possession of the property under the terms of the mortgage at the time of the seizure by the sheriff. Under the evidence and the law, there was no possession in Hardwick at any time. *Swiggett v. Dodson*, 38 Kas. 702, and cases therein cited; 1 Cobbey, Ch. Mort., p. 494, n. 5, and cases

cited. See, also, *Bank v. Summers*, 42 N. W. Rep. 536; *Murch v. Swenson*, 42 id. 290; *Bassinger v. Spangler*, 10 Pac. Rep. 810; *Steele v. Benham*, 84 N. Y. 634.

The verdict of the jury was grossly excessive, and when the jury found the value of this property to be $1,850, they must have wholly disregarded the evidence. It is apparent that the jury intended by the verdict to find, not the value of the property, but rather the amount which, by the evidence, was shown to be due Hardwick on the notes of Stow & Hite, because the amount shown to be due on these notes corresponds, with singular nicety, to the amount of the verdict. If this is not the reasonable theory, then the jury must have been influenced by such passion and prejudice as should secure a new trial in this cause.

We insist that any verdict finding the value of the goods in excess of $920.90 is not sustained by the evidence, and is excessive.

*Madden & Buckman*, for defendant in error:

We think, upon the authority of *Leser v. Glaser*, 32 Kas. 546, alone, the court must uphold the mortgage in this case; but there is plenty of authority in our own court, and in the courts of other states and the text-books, to uphold this mortgage. Not one dollar of the proceeds of the sales was to go to the mortgagors. They were to derive no benefit from the sales, except so far as their debt was to be paid. The mortgage in this case must be upheld on the authority of *Frankhouser v. Ellett*, 22 Kas. 127; *Muse v. Lehman*, 30 id. 514; *Cameron v. Marvin*, 26 id. 612. See, also, *Bliss v. Couch*, 46 Kas. 400; *Whitson v. Griffis*, 39 id. 211.

Was the verdict of the jury excessive, as claimed by the plaintiff in error? The jury found the value of the goods to be $1,850, and the value of the plaintiff's interest to be $2,012.85, which they were surely warranted in finding under the evidence, and on the hearing of the motion for a new trial, the plaintiff remitted down to $1,614.05, being the value as laid in his affidavit in replevin.

We think the testimony abundantly shows an actual and continued change of possession. What the statute requires, in the absence of recording, is actual and continued change of possession. Now, the evidence shows that, up to the time of giving this mortgage, Stow & Hite were in the actual possession of the goods, and J. C. Hite was working for them. Upon the authority of *Swiggett v. Dodson,* 38 Kas. 702, cited by counsel, J. C. Hite had no possession at that time. Then the mortgage is given, and in it J. C. Hite is to have the possession, and the testimony shows that he did go into possession, and remained in possession continuously until the goods were seized by the sheriff.

The opinion of the court was delivered by

Horton, C. J.: There are six allegations of error discussed in the briefs. The principal ones are: That the petition in the case fails to state any cause of action; that W. P. Hardwick, the assignee, never had any actual possession of the property in dispute prior to the seizure thereof by J. W. Connor, the sheriff; and that the verdict of the jury is excessive. It is insisted that the trial court committed error in permitting the introduction of any evidence, upon the ground that the mortgage shows that the mortgagee was not entitled to possession, and that if he took possession, as he alleges, it was in violation of the agreement under which he had accepted the mortgage. It appears from the stipulations of the mortgage that the possession of J. C. Hite, a third person, was really for the benefit of Hardwick, the assignee. He was to sell the goods and deposit 80 per cent. in the bank for the benefit of the notes secured, and was to use the other 20 per cent. in the purchase of staple groceries to keep up the stock, so that the rest of the stock could be sold to a better advantage. (*Frankhouser v. Ellett,* 22 Kas. 127; *Whitson v. Griffis,* 39 id. 211.) The mortgage also contained a provision permitting Hardwick to take possession of the property if default were made in the payment, or any part thereof, or if he deemed himself unsafe or

1. Cases, followed.

insecure. (*Werner v. Bergman*, 28 Kas. 60.) The petition specifically alleges that on the 13th day of June, 1889, there was default in the payment of a portion of the debt secured thereby, and that the mortgagee, deeming himself unsafe and insecure, upon the 14th day of June, 1889, took possession of all of the property under and by virtue of the mortgage, and that he continuously held possession thereof until the 21st day of June, 1889, at which time the sheriff seized the same. (*Isenberg v. Fansler*, 36 Kas. 402.) There was ample evidence offered in the case tending to show that Hardwick took actual possession of the property on the 14th day of June, 1889, and that J. C. Hite was in possession thereof for him and as his agent.

2. Conflicting evidence—finding.

The verdict of the jury placing the value of the goods at $1,850 was high, but there was some evidence to sustain it. D. D. Hale, who had at one time been engaged in buying and selling goods, was one of the appraisers at the time the goods in controversy was seized by the sheriff. He appraised the goods at a value he thought they would bring at a forced sale by the sheriff. His valuation was about $1,500. A. J. Truesdale, another appraiser of the goods at the time the sheriff seized the same, fixed their value at $1,500, or close to that sum. At the time of the trial he was engaged in the hardware and grocery business. He also appraised the stock of goods at the time Hardwick, the assignee, filed his inventory. When he made the appraisement for the assignee, the cost mark was given to him; but the last time he valued the goods he did so upon his own judgment, endeavoring to fix a value that the goods would bring under the hammer. This value was about 40 per cent. less than the cost mark as given to him. Hardwick showed by his evidence that the greater portion of the goods were the same which he had sold to Stow & Hite; that while he had the goods in his possession as assignee, he was engaged in selling them at retail, which was only about six months before they were seized. He testified:

"Ques. Now, what was the value of the goods taken by the sheriff? Ans. I thought the value was $2,000.

"Q. You say the value of the goods was $2,000? A. Yes, sir."

Under the circumstances, we do not think there was any error in receiving the evidence of Hardwick and Truesdale. In any event, no proper objection was made to the competency of Truesdale as a witness. Considering all of the evidence before the jury and trial court, as a remittitur was allowed fixing the value of the goods at $1,614.05, we are unwilling to reverse the case upon the ground of excessive value.

Upon the trial, the contention of defendant below was that Hardwick, as assignee, fully exhausted his authority when he made the sale of the goods to Stow & Hite and accepted notes with sureties thereon in payment, and that he acted outside of his power or duty, as assignee, in accepting the chattel mortgage and in attempting to enforce the same; also, that the goods were not the property of Stow & Hite at the time the chattel mortgage was executed, as the firm had been dissolved and gone out of business, and that the chattel mortgage was taken to secure other indebtedness than that due from Stow & Hite to Hardwick, as assignee. Stow & Hite were primarily liable upon the notes executed by them.

3. Assignee—power in insolvency.

To preserve the property of the estate, Hardwick, the assignee, had full authority to accept the chattel mortgage upon their goods to secure the payment of their notes. The jury were the judges of the weight and credibility of the witnesses, and upon their finding we must, of course, hold that the goods embraced in the mortgage belonged to Stow & Hite at the date of the mortgage, and that at that time the firm had not been dissolved. We must also hold that the chattel mortgage was taken to secure the actual indebtedness due from Stow & Hite to Hardwick, not any other or outside indebtedness.

We have examined the other errors alleged, but do not deem them sufficiently prejudicial to cause any reversal of the

judgment, nor do we think it necessary to make any comments thereon. The debt owing to Hardwick, the assignee, was a valid subsisting debt, and one that Stow & Hite were justly bound to pay. The mortgage was not given to secure more than the actual indebtedness. Stow & Hite had the right to prefer to pay Hardwick, and he had the right to seek a preference, even though the preference would leave the other creditors nothing. Upon the general finding of the jury, all doubtful questions of fact must be resolved in favor of the successful party. As the case is presented to us, Hardwick is in the condition of a vigilant creditor, who secured an honest claim in a lawful manner before any levies were made by other creditors. We perceive no good reason why his chattel mortgage should be set aside, or the subsequent levies of the creditors be regarded as prior or better liens.

4. Chattel mortgage, validity of.

The judgment will be affirmed.

All the Justices concurring.