Williams, C. J.
'The record shows that William R. Ryan, the- defendant in error, sold, a stock of drugs and meichandise consisting of such articles as are usually kept in a retail drug-store] to Eugene Louselle, who gave Ryan a mortgage on the property to secure the payment of three notes, maturing at different dates, and which were given by the mortgagor for the purchase price of the goods. The mortgage, which was duly executed, verified, and filed with the proper officer, contained the following stipulation: “It is hereby understood that whatever portions of said stock that may be sold in general trade, that the goods purchased by the said grantor shall replace those that were so sold in general trade, and that this mortgage shall be a lien ón same. To have and to hold all and singular the-goods, chattels and property above granted, bargained and sold, or intended to be granted, bargained and sold unto the said grantee, his heirs and assigns.” It contained the further stipulation that if default' should be made in the payment of either of the notes, or if before such default the mortgagee should ‘deem it necessary for his more complete and perfect security, he is hereby authorized and empowéred to enter the store or other place where the goods may be, and take and carry away said mortgaged property, and sell and dispose of the same at public or private sale, and out of the money arising therefrom to retain and pay the mortgage debt, and all charges touching the same, together with a sufficient sum to indemnify the mortgagee for any damages sustained by him by reason of any of the covenants of the mortgagor, rendering the overplus, if any,to the mortgagor.” After the execution and filing of the mortgage, the mortgagor, who retained possession of the stock *310 of goods included in the mortgage,-sold at retail therefrom, and from time to time added to the stock other goods purchased to supply the place of those sold; and he thus continued in possession, carrying’ on the business until the last mortgage note matured, when the mortgagee, after calling several times to see the mortgagor and failing to find him, and becoming apprehensive of his security, took possession of the mortgaged property, including the property purchased to supply the place of what had been sold by the mortgagor. When that had been done, and while the mortgagee was so in possession, the plaintiff in error, Francisco, who was a constable, levied an attachment on the property issued against the mortgagor at the suit of the other plaintiffs in error who were creditors of the mortgagor, and ' todk the property into his custody under the writ. Thereupon Ryan brought the action below to replevin the goods, obtained their possession, sold the same, and applied the proceeds to the payment of the mortgage indebtedness. The attaching creditors, who were made parties to that action, set up their claims, controverted the right of the mortgagee to the property, and prayed judgment accordingly. At the trial, the plaintiff requested the court to charge the jury that the “plaintiff had the right to seize said property under his mortgage, and if the jury found that he did possess himself of the same before defendant’s attachments, their verdict should be for the plaintiff.” The defendants requested asan instruction, that the mortgage “was, as a matter of law, fraudulent and void as to the defendants, and that neither as to goods subject to sale in being and possessed by Louselle at the date of said mortgage, nor as to renewals of or additions to the same did *311 plaintiff, under his said mortgage, have the right to seize the same; and that unless thev found that Louselle delivered said goods to plaintiff or - assented to his taking possession thereof in some way other than signing said mortgage, the verdict should be for the defendants for the amount of their claim. ” Neither instruction was given, but, as the record discloses, the court “not being prepared to charge upon said propositions, by consent a juror is withdrawn, the jury discharged,and the matter in controversy submitted to the court. On consideration whereof the court finds for the plaintiff and assesses his damages at five cents;” and judgment was rendered for the plaintiff, which the circuit court affirmed.
The arguments of counsel for the respective parties here, are directed to the support of the proposition embraced in the instruction which was requested in behalf of the parties they represent.
, The attaching creditors were not seeking to reach any surplus remaining after the application of the proceeds of the mortgaged property to the payment of the mortgage debt; it does not appear that there was any surplus; nor, were they attempting to reclaim property which had been sold to the mortgagor while he was in possession, or subject such property to the payment of their claim. The contention is confined to the sufficiency of the mortgage and the possession taken under it to create a valid lien as against the claim of the plaintiffs in error. The alleged infirmities of the mortgage are: (1) That it gave the mortgagor power to sell in the usual course of business while in possession of the mortgaged property, and is therefore void; (2) That it was ineffectual to create any lien on that part of the property which was ac *312 quired by the mortgagor after theexecubiohof 'the mortgage, and the mortgagee’s possession, though taken prior to the levy Of the attachment, did not cure the defect, because it was not delivered' by, nor obtained with the consent of the mortgagor: and (3) That it -conferred no authority on the mortgagee to take possession of such after acquired property.
'"1. A diversity of opinion has been expressed, and is entertainedin regard to the effect of a power off sale reserved-to a mortgagor of chattel property who remains in possession of the same.
It is said by Campbell, J., in Gay v. Bidwell, 7 Mich. 519, 525, that “ho court has given any satisfactory reason why such a provision should necessarily vitiate a chattel mortgage, although it is undoubtedly liable to abuse. The recording law enables a vigilant 'person to ascertain the existence of such securities.' Many small merchants, especially beginners in the business, have no other means of securing their creditors for the stock they purchase, and can only meet their debts out of current sales. If any creditor is likely to be injured by allowing the debtor to dispose of the mortgaged property, it is rather the creditor whose security is thus cut down, than the one who has no claim on the specific property. To hold that a merchant cannot mortgage' his goods without closing his- doors would be to hold that no mortgage of a merchant's stock can be made at all.” And in a late case, Etheridge v. Sperry, 138 U. S., 266, it is said by Mr. Justice Brewer, speaking of á power of sale by a mortgagor of chattels in possession, that: “If this were an open question, we could not be blind to the fact that the tendency of this commercial age is *313 towards increased 'facilities in the transfer'of property, and to uphold such transfers so far as they are made in good faith;” that,- “the interests of the general public áre not prejudiced by any such transaction between debtor and creditor;” and that, if - the question were “a new one, unaffected by any settled law of the state, we incline to the opinion that the question is not one of law, so much as it is one of fact and good faith. ”
: It was held by this court, in Collins v. Myers, 16 Ohio, 547, that: “A mortgage of personal property, where the mortgagor retains possession of the property mortgaged, with the power of sale, is void as against subsequent purchasers and execution creditors.” At least, in the syllabus such is declared to be the holding, and the opinion seems to warrant that conclusion; from which it may be inferred that such a mortgage is valid as between the parties, and as against creditors of the mortgagor until seized on process issued at their suit. In the subsequent case-of Brown v. Webb, 20 Ohio, 389, it is decided that while such a mortgage, with possession and a power of sale in the mortgagor is void as - against subsequent purchasers from the mortgagor, yet “when possession is taken by the mortgagee, the mortgage' becomes valid so as to •protect the mortgaged property from execution creditors not having made a levy, and against subsequent purchasers from the mortgagor. ” Possession so taken by the mortgagee has the effect of completing his title, and relieving the property from liability to seizure at the - suit of the mortgagor’s creditors. That rule has not been qualified or questioned in any subsequent case, but is rather confirmed by that of Webb v. Brown, 3 Ohio St., 246, where it is said by Warden, J., that “the doc *314 trine which is to be collected from authority and reason seems to be that a sale of goods, made with intent to defraud the vendor’s creditors, is absolutely void, only against the legal process of the creditor;” and that “the utmost concession allowed by law to the interests of creditors leaves it still certain that until seizure by a creditor’s writ, the fraudulent vendee can do with the property all that the vendor might have done had he retained the goods.” Before such seizure it is competent for the debtor, in good faith, and for value, to sell and deliver the property to any one who is willing to purchase it, or transfer the same to a creditor in payment of or security for a bona fide debt; and when so transferred, it is beyond the reach of the other creditors of the mortgagor; and it cannot be material in this respect whether the transfer is the result of an agreement made at the time, or is in performance of a previous agreement binding on the parties. And, as some doubt appears to be entertained in regard to the proper scope of the rule, especially in a case like the one before us, we now hold that a mortgage given in good faith, on a stock of merchandise, to secure a bona fide debt of the mortgagor, is valid as between the parties, although the mortgagor be permitted to continue in possession of the property with the power to sell therefrom in the usual course of business; and, while such a mortgage is invalid as against the creditors of the mortgagor who cause the property to be seized on legal process while it remains in his possession, and purchasers who become such during that time, when the mortgagee takes the possession of the property, either with the consent of the mortgagor given at the time, or in pursuance of a stipulation of the mortgage authorizing it, his title *315 becomes complete and the property is no longer subject to legal process issued against the mortgagor, nor liable for his debts except to the extent of any surplus remaining after the satisfaction of the mortgage debt and proper charges resulting from its enforcement. That the mortgage involved in-this case was made in good faith, to secure a debt justly owing to the mortgagee, is not questioned; and, it appears that he had taken possession of the mortgaged property before the constable levied the attachment thereon, and was in actual possession when the levy was made; so that, he was entitled to hold the property as against the claim of the attaching creditor, so far as his right could be affected by the'question now under consideration.
2. The mortgage in question, as has before been noticed, contains a provision to the effect that it shall be a lien on any goods that the mortgagor should add to the stock to supply the place of those sold in the course of his business; and it appears that some articles so added constituted part of the stock when the mortgagee took possession of the same; and, as to those articles, it.is contended the mortgage created no lien, and the mortgagee’s possession gave him no right to them.; and further, that because they were so commingled with the balance of the stock as to be indistinguishable and inseparable, his possession of all the property was illegal, and it was, therefore, liable to be taken under the attachment which was levied on it.
Courts have differed in regard to the effect of mortgages intended to create a lien on goods which the mortgagor did not own at the time of its execution, but which it was contemplated he would thereafter acquire. This difference has arisen *316 chiefly from the nature of the jurisdiction exercised by the courts. Those of equitable cognizance applying the maxim that equity regards that as done which ought to be done, hold that under such a mortgage a lien attaches to the property as soon as it comes to the mortgagor’s ownership; while at law, it has been held that it creates no present lien, nor one as the property is acquired, but as between the parties it operates only as a contract for a lien, which may be made effectual for the benefit of the mortgagee by possession lawfully obtained of the property, not only as against the mortgagor himself, but also as against any subsequent legal process issued against him, or disposition attempted to be made by him. Whether, or in what instance, in actions under a civil code like ours, by which the two systems of remedial justice are blended and administered in the same courts, and often in the same proceeding’, the equitable rule should he applied, is a question upon which the courts are not agreed, and one whose decision is not necessary in this case. In the case of Chapman v. Weimer, 4 Ohio St., 481, the court followed the rule at law, holding that: “A chattel mortgage, purporting to create a lien on the stock in a grocery, and also oh such as should be subsequently acquired by the mortgagor, creates no lien on the subsequently' acquired property;” but, “when such mortgagee authorizes the mortgagee to take possession of the property secured and attempted to be secured, it is a continuing executory contract; and when the mortgagor acquires such property after the execution of the mortgage, and actually delivers the same to the mortgagee, the latter thereby acquires a valid lien on such subsequently acquired property.”
*317 / The contention of the plaintiffs in error on this point is, that it is essential to the acquisition of a valid lien ■ on the after acquired property under such a mortgage, that the mortgagor voluntarily deliver the property to the mortgagee, or .give his consent to the mortgagee’s possession when taken; and that the lien does not arise if, as in this ease, the mortgagee of his own accord take the possession. In the case just referred to, there was an actual delivery of the> subsequently acquired property, by the mortgagor to .the mortgagee, and the court in the decision confines itself strictly to the case made. But the principle upon which that decision rests is, that the mortgagee constitutes a valid and binding contract between the parties; and being so it must be given effect according to the intention of the parties as that may be ascertained from its terms. . The mortgage being a valid contract for a lien, founded on a valuable and sufficient consideration, a stipulation therein authorizing the mortg’agee to take possession of. the property cannot be regarded as a mere license revocable at the pleasure of the mortgagor, nor as an offer to contract merely which may be withdrawn at any time before it is accepted; but is a completed. contract .already obligatory upon the parties, and which continues to be so until it is fully executed; so that, in taking possession of the after, acquired property in pursuance of its provisions, the mortgagee exercises a right belonging to him under the mortgage, which is something more than the naked permission- or consent of the mortgagor to the act. Acting under this contractual authority in obtaining the possession of the property,’ the consent of the mortgagor thereto at the time, can neither be necessary to *318 the legality of the possession, nor can it in any way add to the rights of the mortgagee. Certainly, after possession so taken, the mortgagor could not successfully assert any claim to the- property, for his contract would prevent him; and, as whatever title he theretofore had to the property is thereby extinguished, nothing remains to be. reached by his attaching or other creditor’s, unless it be such surplus as should remain after satisfying the mortgagee’s debt.
This appears to be the established law elsewhere. In Congreve v. Everett, 10 Exch.,298, a farmer gave a mortgage on the crops then on his farm, and such crops as might from time to time be found thereon, agreeing the mortgagee might take possession; and a year or more afterward he took -possession of the crops then growing on the farm. Shortly afterward a creditor of the mortgagor levied an execution upon the crops and sold them. In a trial at law brought by the mortgagee for the value of the property, it was held he was entitled to recover. Parke, B., in giving judgment said: “If the authority given by the debtor by the bill of sale had not been executed, it would have been of no avail against the execution. It gave no legal title nor equitable title, to any specific goods; but when executed— not fully and entirely, but only to the extent of taking possession of the growing crops — it is the same, in our judgment, as if the debtor himself had put the plaintiff in actual possession of those crops.” That decision has since been followed by the English courts. And it is maintained by a long line of American cases, that it is immaterial whether the mortgagee takes possession in invi *319 turn, or the mortgagor voluntarily puts him in possession, if the possession be taken under an authority contained in the mortgage. In either case the mortgagee obtains possession under a valid contract which entitles him, to hold the property as against any subsequent process at the suitof the mortgagor’s creditors. Amongthemany cases so holding are Chase v. Denny, 130 Mass., 566, where it is said that “if the after acquired property is taken by the mortgagee into his possession before the intervention of any rights of third persons, he holds it under' a valid lien, by the operation of the provision of the mortgage in regard to it;” and, that the executory agreement of the owner, in such case, is a continuing agreement, so that “when the creditor does take possession under it, he acts lawfully under the agreement of one having the disposing power, and this makes the lien good.” And see Moody v. Wright, 13 Met., 17; Keating v. Hannenkamp, 100 Mo., 161; Barton v. Sitlington,128 Mo., 164; Tennis v. Midkiff, 55 Ill. App., 642; O'Neil v. Patterson, 52 Ibid, 26; McCaffrey v. Woodin, 65 N. Y., 459.
3. It is further claimed that the mortgage involved in this case did not authorize the mor tgagee to take possession of the property which was purchased by the mortgagor to supply the place of that sold by him, the authority being to take possession of' the “mortgaged property,” which, it is contended, does not include that so purchased. As has been noticed, however, the.mortgage purports to create a lien on the property so purchased by the mortgagor, as well as on the stock owned by him when it was executed, and it was evidently intended by the parties to have that effect. .It is but a reasonable interpretation of the instrument, therefore, *320 looking to all its provisions, that. by the phrase “mortgaged property” .in the subsequent-clause, the parties meant all property which they intended and-agreed should be covered by the mortgage. That interpretation is necessary to give full effect to all its parts, and accomplish the manifest purpose and intention of. the parties.
The seizure .clause in chattel mortgages is inserted for the benefit and: protection- -of the mortgagee; and when,, like the -one in this case, it authorizes, him. to .take the property when, he deems it necessary for his better, 'security, he may take it whepeyer, in his judgment, it is ■ best for him to do so; and the rightful exercise of that authority does. not depend upon-the fact that he has reasonable grounds for deeming it necessary for his security. As - said in Werner v. Bergman, 28 Kans., 60, 64, ‘-if the mortgagor wishes to retain- possession of the property, until the; mortgagee shall have, reasonable grpunds to deem himself insecure, he can iusert, or .have inserted, a stipulation to that effect in the mortgage; or if .he wishes to go still further, and retain possession of the property until the mortgagee shall become in fact insecure, he can have a stipulation put in the mortgage to that effect. ,- But if he chooses only to have inserted, in the mortgage a clause that he shall have the right to, the .possession of the property until the mortgagee deems himself insecure, then he, can.only retain the-property-until the mortgagee does in fact-deem himself insecure ; and he has no right to question the grounds upon which the mortgagee entertains such feeling of insecurity.” . Finding no error, in, the record, the . .• - • . - - -

Judgment is affirmed. ■