# BENJAMIN M. DAVENPORT

*v.*

# EMMA LEDGER.

1. CHATTEL MORTGAGE—*mortgagee taking property maliciously, liable.* Where a chattel mortgage is given on household furniture and goods, to secure a debt, giving the mortgagee the right to take possession at any time he should feel himself insecure or unsafe, or fear waste, diminution or removal, and he takes possession on the same day, and at an unusual hour, without previous notice, from malicious motives or without a reasonable belief that his debt is unsafe or insecure, he will be liable to the mortgagor in trespass, and if the taking is malicious, the jury may give exemplary damages.

2. MEASURE OF DAMAGES—*taking property under chattel mortgage before debt is due.* Where the mortgagee wrongfully takes possession of mortgaged chattels before his debt is due, and the mortgagor procures a prior mortgagee to replevy the same from him, and they are sold under the prior mortgage in payment of a debt of the mortgagor, the proper measure of the mortgagor's damages, in trespass for the wrongful taking, will be the difference between the market value of the property at the time it was first taken, and its market value when retaken on the replevin suit, together with such other actual loss to business, or otherwise, as may be proved as the direct result of the first taking. The defendant will not be liable for any injury to the property after the retaking, nor for any loss consequent upon the necessary result of a sale at auction by the second mortgagee.

3. EVIDENCE—*to disprove malice inferred.* Where a chattel mortgage on household goods was given at ten o'clock in the morning, and the mortgagee's agent seized and removed the property at six o'clock in the evening of the same day, under a clause giving him the right to take possession when he should feel himself insecure or unsafe, and he is sued in trespass, it was *held,* that he had the right to prove by the agent his directions as to taking possession, to disprove the inference of malice arising from the fact of taking the property at an unusual hour, without previous notice.

4. SAME—*proof that party went under different names, irrelevant.* In trespass by a mortgagor of chattels, against the mortgagee, for wrongfully taking possession of the property, it is not proper to allow the defendant to show that the plaintiff had signed other papers by a different name, or had gone by another name. The party can not be impeached in this way.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. PERKINS & CHASE, for the appellant.

Messrs. MERRIAM & ALEXANDER, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellee executed to appellant, on the 19th day of March, 1874, a chattel mortgage on certain household goods, to secure the payment of a promissory note for $175 and accruing interest thereon, due and payable on the 20th day of May, 1874. There was a clause in the mortgage authorizing appellant, if he should feel himself insecure or unsafe, or should fear diminution, removal, or waste for want of care, of the property, as well as for other (at present unimportant) enumerated causes, to treat the note as due and payable, without previous notice of his election so to do, and take immediate possession of the property, and remove, sell and dispose of it, etc.

On the evening, between the hours of 6 and 7 o'clock, of the 20th of April, 1874, one Scanlan, a constable, and others acting under his direction, by the authority of appellant, entered appellee's premises whilst she and her boarders were at supper, seized the property described in the mortgage, placed it on express wagons and conveyed it some distance, to a place of storage.

There is a conflict in the evidence as to what damage was thus done the property—some of the witnesses describing it as very serious, and others as slight.

On the same day the mortgage was executed by appellee to appellant, but several hours before that was done, appellee had also executed a chattel mortgage on the same property to James B. Storey, to secure the payment of a promissory note for $300 and accruing interest, due and payable on the 18th day of March, 1875; and this mortgage was filed for record on the same day, and before the execution of the mortgage by appellee to appellant.

After the property was taken by Scanlan and others, Storey sued out a writ of replevin, by virtue of which the sheriff took possession of the property, and Storey subsequently had it

sold under a clause in the power in his mortgage, realizing from the sale $314.92, of which $41.49 was applied to the payment of the costs of the sale, and the residue in satisfaction of his mortgage.

Appellee sued in trespass for the taking of the property by appellant. The jury returned a verdict in her favor for $970. Appellant entered his motion for a new trial, and appellee then entered a *remittitur* of $450 of the amount found by the verdict, whereupon the court overruled the motion for a new trial, and gave judgment for the balance, $520.

The evidence showed that Scanlan entered appellee's rooms and commenced carrying away the property, at or near 6 o'clock in the evening, while appellee and her boarders were at supper. The property covered by the mortgage embraced substantially everything that was in the rooms, except appellee's clothing, and it was all taken away at the time. The taking of the property at that hour, without any previous warning, was a very strong circumstance showing malice, and could not, reasonably, have been regarded otherwise by the jury.

For the purpose of rebutting malice, appellant asked the witness, Scanlan, this question: " When did you receive instruction from Mr. Davenport to take them?" meaning, as is evident, the property taken by him from appellee. Objection was made to the witness answering the question, which was sustained by the court, and this is assigned for error.

If Scanlan, of his own volition, and without the direction or knowledge of appellant, selected this hour to make the seizure, appellant should not be held responsible for any malice to be implied therefrom. The time when appellant instructed him in regard to the seizure, of itself, it is true, does not prove what direction was given as to the time of the seizure, but, accompanied by a statement of what the instructions were, it might have an important bearing in showing that appellant could not have anticipated that the seizure would be made at an unreasonable hour; as, for instance, if appellant gave him the mortgage at 10 o'clock in the forenoon, and directed him to go and seize the property, it being near by, it would be rea-

sonable to conclude that he could not have intended Scanlan was to delay the seizure until 6 o'clock in the evening.

We think the fact sought to be proved by the witness was one which it was competent to give to the jury, on the question of malice, and we know of no reason why Scanlan was not as competent to prove it as was appellant. He was the actor in the matter, for appellant, and what he heard appellant say, and when he said it, in directing his act, was as much original evidence as was the evidence of appellant to the same point. If the hour was selected by himself, without the direction or knowledge of appellant, he knew it just as well as appellant did.

But appellant testified to this point, and, since there was no evidence contradicting him, we could not reverse the judgment for this cause alone.

We see no error in the ruling of the court in sustaining the objections to the questions propounded by appellant to appellee.

As to the contents of the lease, the writing itself should have been resorted to. Appellee had given no previous evidence of what they were, and no basis was laid to justify her cross-examination in that respect.

There was no dispute about the identity of the goods covered by the Storey mortgage, so far as we can understand from the evidence, and whether appellee signed by one or many names, was unimportant. The only purpose the proving that she had gone by the name of Brown could, apparently, subserve, was to bring her general character under a suspicion, and it was not proper to seek her impeachment in this way.

The only instruction given by the court was the following

"The chattel mortgage gave to the defendant the right to take possession of the goods if he felt (whether with sufficient cause or not, makes no difference,) that his debt was not safe and secure. He was, by the mortgage, made the sole judge upon that subject, and if he did so feel, the plaintiff has no right to recover; but if he had no such feeling, then she is

entitled to recover the actual damages which she suffered by reason of the taking of the goods, which would be the actual value of the goods (less what she owed the defendant on the mortgage, and what was paid on her debt to Storey), with interest at six per cent per annum on the same from the time of the taking to this time. And if the jury find, from the evidence, that he had no such feeling, but took her goods from malice and ill will only, then to the damages before mentioned may be added such smart money as the jury, from the evidence, may deem appropriate."

Appellant asked, but the court refused, this instruction:

" If you shall find, from the evidence, that, after defendant took the goods mentioned in the mortgage, they were taken from him by the sheriff of this county, under a writ issued out of the circuit court of this county, then the court instructs you that defendant is not liable for the goods so taken from him by the officer, after they were so taken, and it matters not what disposition was made of the goods after they were so taken out of the possession of defendant; he is only liable for what occurred while he had possession of the goods."

Notwithstanding the instruction given by the court was more favorable to appellant, in that it omits the essential element that his belief that his debt was not safe, or was insecure, had reasonable grounds to support it, than he was entitled to have it, (*Furlong* v. *Cox*, 77 Ill. 295,) still, we are of opinion that, under the evidence, the principle of the instruction, as asked, was a correct modification to that announced in the one given.

The evidence shows that appellee was present when the property was replevied and taken from the custody of Scanlan and placed in the possession of Storey. She accompanied the officer and aided in identifying the property, and there is evidence that, a day or so afterwards, she asked appellant, in the presence of a deputy sheriff, where the property was. and, upon being informed by him that he did not know, she re-

plied: "Well, we know where the property is. You were ahead last night, and this man and I are ahead now."

Being thus a party to the retaking of the property, and aiding in appropriating it to the payment of her debt secured by the Storey mortgage, she ought not to be allowed to recover for any injury to the property, if any there was, after that retaking, nor for any loss consequent upon, and the necessary result of, a sale at public auction. The measure of the actual damages sustained by her is the difference between the market value of the property at the time it was taken, and its market value when retaken on the writ of replevin, together with such other actual loss to her business or otherwise, as she may have proved as the direct result of the taking.

For the error in refusing this instruction, the judgment is reversed and the cause remanded.

<div align="right">

*Judgment reversed.*