(January 25, 1893.)

## MURPHY v. BRAASE, SHERIFF.

### [32 Pac. 208.]

SALE AND DELIVERY OF PERSONAL PROPERTY TO SECURE LOAN.—M. loaned K. $1,500 in money, and took a bill of sale of some thirteen head of horses, and some other articles of personal property.

SAME—EVIDENCE OF SALE AND DELIVERY OF PROPERTY.—At the time the bill of sale was taken K. called Nelson Brothers, who then had possession of the property, and, in the presence of M., told Nelson Brothers that he had transferred the property to M. for the purpose of securing the indebtedness above mentioned.

SAME.—He told Nelson Brothers to hold the property for M. The horses had just been gathered from the range, and were in the corral of Nelson Brothers, in the town where the transaction took place, to be taken to the winter range, and cared for during the winter by said Nelson Brothers. Nelson Brothers were also informed by K. that M. would pay for the wintering of the horses, and that they were to be turned over to him in the spring. Two horses that were included in the bill of sale were in the

Statement of Facts.

charge of one Lufkin. K. notified Lufkin that he had turned the horses over to M. and that he must deliver them to him.

DELIVERY OF PROPERTY TO VENDEE BY AGISTER—STATUTE OF FRAUD.—In the spring Nelson Brothers returned the horses from the winter range, and delivered them to Murphy, who hired a man to look after them on the range during the following summer. *Held,* that there was such a delivery and continued change of possession as would relieve the property from the provisions of section 3021 of the Revised Statutes of Idaho.

CLAIM AND DELIVERY—ATTACHMENT—PROPERTY NOT SUBJECT TO LEVY.—The defendant, as sheriff, levied upon the property by virtue of attachment at the suit of one La Barge against K. in September of the year following the transfer of the property. *Held,* that the property was not subject to levy for the debts of K. A creditor desiring to contest the validity of a sale must prove a debt or judgment, if it has been reduced to a judgment, before he can be permitted to question the validity of the transfer of property as a pledge.

(Syllabus by the court.)

APPEAL from District Court, Alturas County.

This is a case of claim and delivery. The plaintiff alleges that he is entitled to the possession of certain property described in the complaint, as pledgee; that said goods and chattels, consisting of horses, mares and colts, are of the value of $1,500; that the defendant wrongfully took the said goods and chattels from the possession of the plaintiff, without his consent; that the defendant still unlawfully and wrongfully withholds and detains said goods and chattels from plaintiff, to his damage in a sum of $500—and demands judgment. The defendant, in answer, denies that plaintiff was entitled to possession of said goods as pledgee, or otherwise; 2. Denies that the property is of any greater value than $700, and admits that plaintiff demanded possession; 3. Denies that defendant, on or about September 11, 1890, or at any other time, wrongfully took said goods or chattels from the possession of the plaintiff; denies that he wrongfully withholds the same; denies the damage; and alleges that the property was, at the time stated in the complaint, the property of Patrick H. Kinney, and not the property of the plaintiff. On the third day of September, 1890, an action was duly commenced by one Felix La Barge against Patrick H. Kinney et al., in the district court of the second judicial district of Idaho, to recover the sum of $600 on an express

contract for the direct payment of money. A summons was duly served on said Kinney, and writ of attachment issued in due form in said last-named action, at the time of the issuance of the summons therein, and placed in the hands of the defendant as sheriff. Defendant served a copy of the writ of attachment upon Kinney, and levied on the property described in the complaint, claiming that said property was the property of P. H. Kinney, and took it into his possession. Trial was had before the court and jury, and the jury returned the following verdict: "We, the jury, find for the plaintiff, and that the plaintiff is entitled to the possession of the property, and that the property is of the value of fifteen hundred dollars." Judgment followed the verdict. Motion for a new trial was made upon the statement of the case, and overruled by the court. From the order overruling the motion for new trial, an appeal was taken to this court.

Texas Angel, for Appellant.

The plaintiff's testimony shows that there was no actual or continued change of possession of the property as required by section 3021 of the Revised Statutes; that such change of possession was not open, notorious or visible, or such as to give notice to the world that the party had ceased to exercise ownership and control, over the property, and that unless such a transfer was made it was void as against the creditors of the party making such transfer. (*Stevens v. Irwin,* 15 Cal. 506, 76 Am. Dec. 500; *Engles v. Marshall,* 19 Cal. 320; *Cahoon v. Marshall,* 25 Cal. 197; *Godchaux v. Mulford,* 26 Cal. 316, 85 Am. Dec. 178; *Dean v. Walkenhorst,* 64 Cal. 78, 28 Pac. 60; *Bell v. McClellan,* 67 Cal. 273, 7 Pac. 699; *Bunting v. Salz,* 84 Cal. 168, 24 Pac. 167; *Lawrence v. Burnham,* 4 Nev. 361, 97 Am. Dec. 540; *Harkness v. Smith,* ante, p. 221, 28 Pac. 423; *Mosgrove v. Harris,* 94 Cal. 162, 29 Pac. 490.) A sale unaccompanied by immediate delivery is void as to attaching creditors, though delivery is made before levy. (*Chenery v. Palmer,* 6 Cal. 119, 65 Am. Dec. 493; *Watson v. Rodgers,* 53 Cal. 401.) The facts as to the transfer were undisputed, and they were for the court to pass upon and not the jury. (*Hodgkins v. Hook,* 23 Cal. 581.)

Selden B. Kingsbury, for Respondent.

To the objection that the transaction did not make the plaintiff the pledgee of the property, and that the bill of sale was in the nature of a chattel mortgage, and could not be used as evidence to establish a pledge, we reply, in the language of our statutes, that any writing by which the possession of personal property is turned over to secure the payment of a debt is evidence of a pledge. As to the question raised by the records, we cite Statutes of Idaho, sections 3410 to 3429, where we think both the statute and the common law on the subjects of pledges is set forth. We also quote: "But when the real character of the transaction is manifested by the language of the parties to the contract, disclosing their purpose and intention, all that the court has to do is to recognize its real and true character, and to carry into effect the parties' declared intention." (*Wright v. Ross,* 36 Cal. 429.) The delivery must be such as would be requisite to transfer the property in the same chattels in case of the sale of them; hence a symbolical delivery is sufficient wherever such delivery would be sufficient in the sale of the same property." (*Davis v. Russell,* 52 Cal. 611, 28 Am. Rep. 647; 2 Deering's Code, sec. 3440; notes to *Williams v. Lerch,* 56 Cal. 330; Idaho Laws, secs. 3020, 3021.) Sale is good between the parties whether possession is delivered or not. (*Visher v. Webster,* 13 Cal. 58; *Ghirardelli v. McDermitt,* 22 Cal. 539.)

MORGAN, J. (After Stating the Facts.)—The plaintiff, being introduced as a witness in his own behalf, says that he loaned P. H. Kinney the sum of $1,500 in the fall of 1889; that Kinney turned over the horses in controversy to him, together with some other personal property, as security for said money; that, at the time of said loan, a portion of the horses were in the possession of Nelson Brothers, ready to be taken to the winter range, and a portion at the Lufkin ranch. At the time of said contract of loan, a written bill of sale of the horses, duly executed, was delivered to plaintiff by said Kinney. In January, 1891, another bill of sale was executed, covering the same, with some additional property. The bills of sale are identified and introduced in evidence. Plaintiff further states that when said loan was made, said Kinney promised and agreed that the property should remain in the possession of the plaintiff until said debt was paid, and so notified Nelson Brothers and Lufkin;

that in the spring, when Nelson Brothers returned the horses from the winter range, they were turned over to him (the plaintiff); that he hired a man to look after them, and that they were in his possession until they were taken by the defendant, Braase, under the writ of attachment; that he paid charges claimed by Lufkin for breeding the mares; that he paid Nelson Brothers twenty-five dollars, which was all they demanded for wintering the horses in their possession; that he also paid the taxes on the horses; twenty-five dollars were paid to Nelson Brothers at the time they delivered the horses to the plaintiff in the spring; that he only held the horses and other property as security for a debt of $1,500; that, at the time of said loan, the property was not pointed out to him, but he had frequently seen the horses before that time, and knew them well; that, at the time the loan was made, Nelson Brothers, who had the horses in their corral, were present, and Kinney and this plaintiff (Murphy) called them out, and explained that the property had been turned over to Murphy, and that they were to hold it for him. The testimony introduced on the part of the defendant was: 1. The writ of attachment by virtue of which the property was levied upon; 2. The defendant was introduced as a witness, and testified as follows: "I took into my possession the property specified in this writ. I found two of the horses in Nelson Brothers' corral; also two upon Indian creek, and two at Lufkin's ranch. The balance were in the mountains between Greenhorn and Deer creeks. There were three on Deer creek, and two on Indian creek." He said further: "I do not know of Kinney exercising any control over these horses except what I have heard. They were always called the 'Kinney Horses.'" Peter Weber, on behalf of the defendant, swears: "I could not tell who had charge or control of these horses during the summer of 1890 prior to the attachment. I think Jack Harris was a deputy here for a while, under Kinney, and worked for him. Jack Harris was working for Kinney, and looking after the mares, going back and forth, and keeping track of them." Sutherland testified that Kinney claimed these horses during the summer of 1890; that "Kinney said the horses were his, and he did not want us to be running them around. We were chasing them around the barn, to drive them away."

The appellant contends that there was no such delivery of the property to Murphy as would constitute an immediate and continued change of possession, and quotes section 3021 of the statute, which is substantially as follows: "Every transfer of personal property, other than a thing in action, and every lien thereon, other than a mortgage, when allowed by law, is conclusively presumed.  If made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession," etc., and cites, in support of his contention, *Bell v. McClellan,* 67 Cal. 283, 7 Pac. 699.  The facts in that case, however, were as follows: It appeared that some hay presses were the property of one Duncan, and were stored on the farm of one McNulty, his brother in law.  .Duncan sold the presses to the plaintiff, in satisfaction of the indebtedness then due from him to the plaintiff.  Plaintiff received a bill of sale of the presses, and immediately wrote to McNulty stating that he had bought them from Duncan, and asking McNulty to hold them for him.  Duncan gave McNulty no notice of the sale, and the presses remained in McNulty's shed until the second day of June, following the sale, which was in January, when the plaintiff again wrote to McNulty, telling him to let Duncan take them and use them.  Under this permission, Duncan took the presses, and had them repaired at the blacksmith-shop, and used them to bale hay on his own account, until the twenty-ninth day of August following.  On the twenty-ninth day of August, Duncan and McNulty went to the plaintiff's store at Oroville, and Duncan then told the plaintiff that he was sick, and did not want the presses any longer.  The plaintiff then told McNulty to take them, and continue to bale hay with them for him (plaintiff).  McNulty took the presses, and continued to bale hay with them for plaintiff until the 4th of September, when they were seized by the sheriff under a writ of attachment, at the suit of one *Davidson v. Duncan.*  Under that state of facts, it was held that there was no sufficient delivery to the plaintiff, inasmuch as Duncan, the vendor, never directed McNulty, who had the presses in charge, to deliver them to the plaintiff, and they were never actually delivered to plaintiff

at all. No one ever gave McNulty any notice that the presses had been transferred to the plaintiff, except the plaintiff himself.

In the case at bar the evidence shows that, at the time of the pledge of the property to Murphy (the plaintiff), Kinney (pledgor), Murphy (the plaintiff) being present, called Nelson Brothers, who then had the property in their possession, to them, and Kinney then told Nelson Brothers that he had turned the property over to Murphy (the plaintiff) ; that they were to keep the property for him, and take them to the winter range for Murphy, to which all consented, all parties being present; that a portion of the horses were then in the corral of Nelson Brothers, to which place they had been gathered for the purpose of taking them to the winter range. The evidence shows, further, that Nelson Brothers took these horses to the winter range, and in the spring returned them, and delivered them to the plaintiff, Murphy, who paid for caring for them during the winter. This was the case with all the horses but two, which were in the possession of Lufkin. Lufkin was also notified by Kinney that he had transferred these horses to plaintiff, Murphy; that he was to keep them for him (plaintiff). The bills of sale were introduced in evidence, not for the purpose of showing ownership of the property in the plaintiff, Murphy, but as a part of the evidence showing that the property had been turned over to Murphy as a pledge for the indebtedness. For such purpose they were proper evidence. The fact that the horses during the summer were looked after to some extent by an agent or employee of Kinney does not militate against the claim of Murphy that the property was pledged to him, and was, as a matter of fact, in his possession. The fact that they were called the horses of Kinney is no evidence against the claim of Murphy. Whatever might have been said during the summer of 1890 by Kinney as to the horses being his was not in the presence of Murphy, the plaintiff, and was therefore not evidence against the plaintiff's right to the possession. Statements of vendor not in the presence of the vendee cannot be permitted to impugn the title of the vendee, where there is no claim or evidence of fraud in the transfer. The evidence of the defendant, introduced on his own behalf, shows that the horses were on the range when the writ of replevin was given

to him, and it was necessary to gather them in before he could make the levy. Stock on the range is held to be in the possession of the owner, or the person entitled to the possession. The stock, having been pledged to plaintiff, and, as we think, substantially delivered to him at the time of the pledge, remained in his possession until they were gathered by the sheriff for the purpose of the levy. In this case, the stock being upon the range, and there being no question about the good faith of the whole transaction, we think the evidence of delivery is of a different character from that required in the case of other personal property.

In the case of *Harkness v. Smith,* ante, p. 221, 28 Pac. 423, cited by counsel, there was no delivery whatever, not even a pretended delivery. The property before the alleged transfer was in the possession of Gallagher and remained in his possession afterward. The stock of goods was being sold by him in the same manner after the alleged sale as before. The case of *Williams v. Lerch,* 56 Cal. 333, is precisely in point. In that case the vendor sold the horses to Williams. The horses were then on the range, and in the possession of the vendor's agent, one Drew. The vendor told Drew that he had sold the horses to Williams, and directed him to deliver them to Williams. Williams was not present. Drew wrote to Williams to come and get the horses. Williams replied that he could not then go for them, but said, "I want you to take care of them for me." Drew replied that he would do so. The court say that the sale was complete. The stock being in the possession of Scotcher, the vendor's agent, at the time of the sale, they were, in law, in the possession of the vendor. Scotcher made and delivered to plaintiff a bill of sale of the horses, and told him that his agent would deliver the horses to him on the range. "It was satisfactory to the plaintiff. He knew when he bought them that the horses were in the charge of Scotcher's agent, and he accepted them as they ran on the range, and, without any knowledge of any existing creditor of Scotcher, paid in good faith the stipulated price. Everything was done that was necessary to a sale. It was complete and perfect if Drew subsequently delivered them to the plaintiff, or took charge of them for him." In the case of *Morgan v. Miller,* 62 Cal. 492, it was held that "H., having cattle running at large with those of his tenant,

sold them to the plaintiff. The cattle were driven into the corral, where H. said to the plaintiff, 'Here are your cows that you bought.' Thereupon the plaintiff requested B. to take care of the cattle. B. agreeing to do so, they were turned back into the pasture." This was decided to be an immediate and actual change of possession, valid as to creditors.

There is no question in this case as to the good faith of the plaintiff and Kinney. The plaintiff had furnished the money to Kinney; and Kinney had pledged this property to Murphy as security for the loan, gave him a bill of sale thereon, and put them in his possession. It is different from a case where there is actual fraud, and where the vendee or pledgee of the property is seeking to hold it for the purpose of defrauding the creditors of the vendor.

The point is made by the respondent that there is no evidence before the court that La Barge was a creditor of Kinney at the time of the transfer of this property; in fact, there is no evidence in the record at all that La Barge is a creditor of Kinney; therefore, he is not in a position to question the validity of the transfer of the possession of the property to the plaintiff. It is true a creditor desiring to contest the validity of the sale or transfer of personal property must prove a debt or judgment, if it has been reduced to a judgment, before he can be permitted to question the validity of the transfer of the property. It appears, however, from the record in this case, that proofs regarding the question of the transfer of the property to the plaintiff were introduced on the trial, without any objection from the plaintiff that the debts on which the attachment rested had not been proved. No instruction was asked concerning the point; nor the attention of the court below in any manner called to it. We think the plaintiff cannot avail himself of the absence of the proof of the attachment debt by objection raised for the first time in the appellate court. (See *Mamlock v. White*, 20 Cal. 598.) We think, also, considering the character of the property at the time of this transfer, that the delivery to the plaintiff, Murphy, was sufficient to sustain the verdict.

The first instruction given at the request of plaintiff is as follows: "Every contract by which the possession of the personal property is transferred as security only is to be deemed a pledge;

and if the jury find that P. H. Kinney (the owner) transferred the possession of the property in question to secure a debt to the plaintiff, and the plaintiff so held it at the time the defendant took the property, then they will find for the plaintiff." The appellant excepts to this charge, but we think that it correctly states the law.

The second instruction is also objected to, which is: "You are instructed that a contract, in writing, though absolute on its face, yet made to transfer personal property to secure a debt, is a pledge merely." This is also a correct statement of the law.

The defendant excepts to instruction No. 3, which is: "In considering what is possession, and what the giving of possession, you must consider the nature of the property, and the manner in which it is usually held and transferred." We see no fault in either of these instructions.

The first instruction requested by the defendant is not the law, and was properly refused, for the reason that there appears in the record no evidence that, at the time of the transfer of the possession of the property, Kinney was indebted to La Barge in any sum whatever.

The second instruction requested by the defendant was also properly refused, for the reason that we think there was sufficient delivery of the property at the time of the execution of the bills of sale.

We think the instructions given by the court, in view of the evidence, were correct, and the refusal of the court to give the instructions requested by the defendant was proper. For the reasons stated above, the judgment must be affirmed, and it is so ordered. Costs awarded to respondent.

Huston, C. J., concurs.

Sullivan, J., having been of counsel in this case, did not take part in the hearing or the determination thereof.