SAMUEL DALY

v.

ED. M. SPILLER, Admr.

*Opinion filed October 23, 1906.*

1. PLEDGES—*when transaction is a pledge of insurance policy and not a sale.* A transaction whereby the holder of a life insurance policy borrows a sum of money from another party, executing and delivering his note therefor drawing interest, together with two instruments, one purporting to be an absolute conveyance of the policy, and the other, signed by both parties, being an assignment of the policy to the lender, with a defeasance clause, is a pledge of the policy, and not a sale.

2. SAME—*when right to redeem pledged property is not lost by laches.* The right to redeem from a pledge of personal property will not be denied by the courts upon the ground that it has been lost by *laches* or has been waived or abandoned, so long as such right is recognized by the pledgee and the pledgor as still existing.

3. SAME—*when pledgee cannot claim absolute title to insurance policy.* Where both pledgee and pledgor, up to the time of the latter's death, have regarded the pledgor as possessed of the right to redeem the pledged insurance policy upon payment to the pledgee of the amount due him, with interest, the pledgee will not be permitted, after the pledgor's death, to claim to be the absolute owner of the policy.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Massac county; the Hon. WILLIAM N. BUTLER, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the Fourth District affirming a decree of the circuit court of Massac county.

The following statement of facts is taken in great part from the opinion of the Appellate Court:

The Mutual Life Insurance Company of New York filed a bill of interpleader in the circuit court of Massac county, and made appellant, Samuel Daly, and appellee, Ed. M. Spiller, administrator of the estate of Samuel W. Green,

deceased, parties defendant. The purpose and prayer of the bill was to require the defendants to litigate their claims to $3469.32, the proceeds of a life policy issued by complainant upon the life of said Samuel W. Green, now deceased. Without formal decree requiring it, the defendants interpleaded and presented their respective claims to the court by answer and cross-bill. Upon issues joined and evidence heard, the court entered a decree fixing the rights of the parties in and to the fund, finding that Daly held the policy only as security for the payment of money, and awarding to him such sum as would reimburse him and directing the payment of the balance to the administrator. Daly appealed, and the only question is whether he was the absolute owner of the policy or held it only as a pledge to secure money loaned and advanced by him.

It appears from the evidence in the record that on November 7, 1890, appellee's intestate, Samuel W. Green, insured his life for $5000 on the ten-year payment plan, the annual premium required being $213.50. He was then twenty-five years of age. In September, 1895, after he had paid five premiums, he applied to appellant, through an agent, for a loan of $800, for which he gave his promissory note, payable one year after date. As a part of the same transaction two other writings were executed and delivered into the hands of appellant, together with the note and insurance policy. One of these instruments purports to be an absolute conveyance of the policy. The other, signed by both Daly and Green, recites that the policy has been assigned to appellant for $800, for which the note was given, and provides that if the note is paid when due appellant will re-assign the policy to Green. From the $800 Daly deducted $213.50 to pay the premium of 1895, $56 for one year's interest on the note in advance and $8 for expenses, and paid the balance to Green's agent. The last four premiums on the policy were paid by Daly, either directly or indirectly, and he was given credit for the same by the circuit court.

The note was not paid when due, but on October 5, 1896, after it became due, Daly endorsed a payment of $100 on the note, and on November 2, 1897, he credited the interest to that date. The money to make these payments was borrowed at a bank by Green and Daly on their joint notes, which were afterward paid by Daly. A number of other financial transactions relating to the borrowing of money and the payment of premiums were carried on between appellant and Green and continued until a short time before Green's death. As late as July 1, 1900, appellant signed and delivered to Green this statement in writing: "This day I agree to surrender to Samuel W. Green policy No. 424,533, life insurance, if paid by the company and Samuel Green to me in sixty days from date the sum of $1700. If not paid as above stated this agreement to be null and void." The sum mentioned in that agreement was about $300 less than the amount then due Daly. On August 13, 1900, Green and Daly gave the insurance company their note for $1467, secured by the delivery of the policy to the company, and the $1467 was paid to Daly. Green, in 1902, paid the interest on this note for one six-months period, and the note, with some interest, remained unpaid at Green's death and was deducted by the company from the face of the policy. Within four months of Green's death, and prior thereto, appellant filed a bill in chancery to foreclose his lien upon this policy for the payment of the $800 note, premiums paid by appellant, and interest, and for an accounting. It was represented in the bill that the policy had been pledged as collateral security for the note. Green did not answer the bill and was defaulted. After his death, and at a subsequent term of the court, the bill was dismissed, and a demand was made by Daly upon the insurance company for the entire sum due upon the policy.

JAMES C. COURTNEY, (ANGUS LEEK, of counsel,) for appellant.

C. L. V. MULKEY, for appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

The initial question is, by the original transaction did Green pledge the policy of life insurance to Daly to secure his note, or was the transaction a sale of the policy to Daly, with a contract for its re-purchase by Green?

It appears that Green applied to Daly for a loan; that in connection with the matter three instruments were executed, which must be construed together in determining what the original contract was. These instruments were, first, a promissory note for $800, given by Green to Daly, due in one year, with interest from date; second, an absolute conveyance of the policy from Green to Daly; and third, an assignment of the policy from Green to Daly with a defeasance, by the terms of which Green was entitled to have the policy re-assigned to him upon the payment of the promissory note when due. The only conclusion which can be reached from an inspection of these instruments is, that the policy was pledged to secure the payment of the promissory note and that it was not sold to Daly.

Appellant contends, however, that if it' be true that the original transaction was a pledge, still that prior to the time of Green's death the latter had abandoned, waived, or lost by *laches,* the right of redemption, and that consequently Daly is now to be regarded as the absolute owner of the policy. It is argued, and cases are referred to as showing, that in instances where the property involved is personal in its character, courts will frequently hold the right of redemption barred by *laches,* or waived or abandoned, under circumstances where, if the property involved were realty, the right would still exist. The authorities cited below, while not directly in point, lead to the conclusion that the right to redeem from a pledge of personal property should not, in any event, be denied by the courts on the ground that it

has been lost by *laches* or has been waived or abandoned by the pledgor, so long as that right is recognized by the pledgee and the pledgor as still existing. Jones on Chattel Mortgages, 688; 2 Story's Eq. Jur. p. 1520; *Green* v. *Capps,* 142 Ill. 286; *Richey* v. *Sinclair,* 167 id. 184.

At the time of Green's death Daly had a bill pending in the circuit court of Massac county alleging that Green assigned and pledged the policy in question to Daly to secure the payment of the $800 note, praying for an accounting against Green as to the money due on that note and advances made by Daly to pay premiums on the policy, asking that Green be decreed to pay the amount due within a short day, and that in default thereof the "said pledged and assigned insurance policy" be sold to satisfy the claim of Daly. While that suit was pending Green applied to one J. F. McCartney for a loan to pay to Daly the amount due Daly and for which he held the policy as security. McCartney talked to Daly in regard to the matter, and the latter said he had brought the suit because Green didn't pay him, and inquired whether McCartney was going to let Green have the money to pay him off with, and in response to an interrogatory from McCartney stated the amount required to pay him off. At all times up to the entry of the decree herein Daly retained possession of Green's $800 note, and while this it not always conclusive, it is strong evidence that he, Daly, still regarded the relation of the parties as that of pledgor and pledgee. If at any time the policy had become absolutely the property of Daly and Green's indebtedness to Daly had been extinguished, the right and natural thing for Daly to have done would have been to surrender to Green the evidence of the indebtedness. The purpose of the agreement of July 1, 1900, was, no doubt, to give Green, who was in failing circumstances, an opportunity to satisfy the indebtedness by the payment of a less sum than was actually due.

We are satisfied that up to the time of Green's death both Green and Daly regarded Green as being the possessor

of a right to redeem the policy by paying to Daly the amount of money loaned and the amount of money advanced by Daly, with interest. That being true, Green's equity of redemption had not been waived or abandoned or lost by *laches,* and Daly will not be permitted, after Green's death, "to better his hold" by claiming that he is now the absolute owner of the policy of insurance in question.

We are not unmindful of the fact that Daly sought to show, by his own testimony and that of the solicitor who filed the bill to foreclose the lien on the policy of insurance, ·(which bill was not signed nor sworn to by the complainant therein,) that Daly did not know precisely what the averments of that bill were; that he said to his solicitor, prior to the filing thereof, that he wanted the question of Green's rights in the policy determined, and that he wanted a suit brought for that purpose for the satisfaction of himself and the insurance company, and that he first learned at a date later than Green's death that the bill which the solicitor filed was a bill to foreclose a lien. Waiving all question as to the competency of these two men to testify to the matters and things detailed by them which occurred before Green's death, and which consisted, in part, of the relation by the solicitor of conversations between himself and Daly in the absence of Green, we find, on examination, that their testimony on this subject abounds in equivocation and evasion to such an extent that the circuit court may well have refused to give weight thereto.

By the decree from which Daly appealed, he was awarded the money he had loaned to Green, with interest thereon, and all the money he had advanced on account of the policy, with interest thereon, and he is entitled to nothing more.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE VICKERS took no part in the decision of this case.