(No. 5847.   October 28, 1932.)

JOHN  D.  ISAAK,  Respondent,  v.  G.  A.  JOURNEY,
Appellant.

[15 Pac. (2d) 1069.]

Peterson & Clark, for Appellant.

A. Humphrey, for Respondent.

BUDGE, J.—Respondent indorsed and delivered to appellant a promissory note in the principal sum of $800 given by one Haberer and wife to respondent and executed and delivered to appellant an assignment of the chattel mortgage securing said promissory note, respondent receiving from appellant the sum of $200. Contending that such assignment was not absolute but was given only as collateral security for the repayment of said $200 and interest, respondent brought this action to recover from appellant the difference between the sum of $200 plus interest thereon and the amount paid by Haberer to appellant in satisfaction of the note and chattel mortgage. Appellant answered the complaint, in effect denying each allegation thereof, and upon the issues thus framed the cause was tried by the court and a jury. Verdict was rendered in favor of respondent for the sum of $502.06, together with interest, and judgment was entered accordingly, from which judgment this appeal is taken.

By his first assignment of error appellant contends that the evidence is insufficient to support the verdict and the

judgment entered thereon, in that respondent failed to show, by clear and convincing evidence, that the assignment of the Haberer note and mortgage, absolute on its face, was in fact given as collateral security only.

In actions of this character the burden is cast upon the plaintiff to establish by clear and convincing evidence that the transaction was a pledge and was so intended by the parties, notwithstanding an outright assignment was given. (*Bergen v. Johnson,* 21 Ida. 619, 123 Pac. 484, 487.) The question as to whether an assignment is absolute or a mere pledge as security for a loan is a question of fact to be determined by the jury. (*Johansen v. Looney,* 30 Ida. 123, 163 Pac. 303; *Schleiff v. McDonald,* 45 Ida. 620, 264 Pac. 866; *Schleiff v. McDonald,* 41 Ida. 50, 237 Pac. 1108.) Every contract by which the possession of personal property is transferred as security only is to be deemed a pledge, and, a contract in writing, though absolute on its face, yet made to transfer personal property to secure a debt, is a pledge merely. (*Murphy v. Braase,* 3 Ida. 544, 552, 32 Pac. 208.) The rule is also so firmly established as to make citation of authority unnecessary (*Webster v. McCullough,* 45 Ida. 604, 264 Pac. 384), that where there is a substantial conflict in the evidence, but sufficient competent evidence, if uncontradicted, to support the verdict of the jury, the verdict will not be disturbed. In view of these rules, and as there is a substantial conflict in the evidence, we are called upon to determine whether there is sufficient evidence, if uncontradicted, to support the verdict of the jury, and also whether such evidence clearly and convincingly establishes the transaction as a pledge and not a sale, and was so originally intended by the parties.

The following facts are disclosed by the evidence: On April 11, 1925, one Giffin obtained a deficiency judgment in foreclosure proceedings against respondent and his wife in the sum of $833.33. In May, 1930, no payment having been made on said judgment, Giffin proposed to respondent that he was willing to accept $500 and $75 attorney's fees in satisfaction of such judgment and that he

would, upon such payment, reconvey to respondent the land covered by the foreclosure proceedings. Respondent, having previously made loans from the milling company of which appellant was manager, thereupon called upon appellant and sought to obtain from him or the milling company a loan of $600 for the purpose of satisfying the Giffin judgment, and offered as security a note for $800 given to respondent by one Haberer and wife, secured by crop mortgage on crops growing on land leased by respondent to Haberer, and also a note for $500 given by one Kuck and wife, secured by crop mortgage. A few days later appellant informed respondent that the milling company he represented would not make such a loan and respondent endeavored to get appellant personally to make such loan, which appellant later refused to do. During these negotiations no mention was made of appellant purchasing the securities. Respondent, having been advised of the invalidity of the Giffin judgment, made an offer to Giffin to pay him $100 in satisfaction thereof. Giffin replied by stating that he was willing to accept $200 in satisfaction of the judgment. Thereupon, on June 21, 1930, respondent interviewed appellant, told him of Giffin's offer, requested a loan of $200 and offered to assign as security either the Haberer or the Kuck note and mortgage. Appellant agreed to make the loan, stating, according to respondent's testimony: "I will take that Haberer paper, but you will have to assign it to me before I consider it security." On June 23, 1930, respondent went to Pocatello with appellant and arrangements were made with Giffin's attorney there to obtain a satisfaction of the judgment from Giffin, who was in California, and forward the same to appellant, who would then forward to the attorney a check for $200. Respondent was later advised by appellant that he had received the satisfaction of judgment and had recorded it. According to the indorsement thereon it was recorded June 26, 1930, at the request of appellant. On June 25, 1930, respondent went to appellant's office where appellant prepared an assignment of the Haberer mortgage. Respondent indorsed and delivered the note and

he and his wife executed and acknowledged the assignment and delivered it to appellant, who caused it to be recorded that day, according to the indorsement thereon. According to the testimony of respondent, after the execution of the assignment, respondent said: " 'Now, Mr. Journey, you will take a note for the two hundred dollars,' and he says: 'No, John, if your word is not good enough for two hundred dollars.' " Respondent testified that the $200 was to be repaid to appellant on November 1, 1930, and that he did not ask appellant what interest he would charge, but expected to pay ten per cent. The Haberer note and mortgage, according to their terms, became due November 1, 1930. On November 3, 1930, respondent called upon appellant and inquired if the Haberer note had been paid and was informed by appellant that it had not. It might be mentioned that the note bears the following indorsement on the back thereof: "10–1–30 $340.99." Two weeks later respondent inquired again but received the same information. Respondent, at this time, asked if Haberer had not hauled in some wheat and sold it and appellant stated that he had. Respondent testified: " 'Well then,' I says 'there must be some money here for me.' 'Well,' he said, 'by the time Mr. Haberer had his small bills paid up there was not much left,' and further said, 'You don't need to worry about Mr. Haberer. He told me as soon as he gets the money for his hay he will pay that note. You don't need to worry about Mr. Haberer paying that note, but I don't know what Mr. Kuck will do.' "

It appears that in August, 1930, respondent had informed appellant that he was afraid the Kuck note of $500 and mortgage might be attached and he wanted to get it out of his possession, and suggested assigning it to appellant as security for a loan, so appellant gave respondent a check for $50 and took an assignment of the mortgage and recorded it. The note was afterwards paid by Kuck to appellant, who deducted the amount of the loan and interest and paid the balance to respondent.

Respondent testified:

"On December—as I recall it, it was the seventh or eighth in the evening I called up Mr. Journey over the phone and asked him, 'Has Mr. Haberer paid that note yet?' He says, 'Yes.' 'Well, then, I will come and get some money.' . . . . 'Well,' he said, 'You ain't got much coming out of this note.' I said, 'I got some coming,' and he said, 'Well, you see me tomorrow in the office.' "

The next morning respondent called on appellant, at which time appellant insisted that respondent sold the note and mortgage to him and that respondent had no interest therein. Respondent interviewed appellant on each of the next four days in an unsuccessful endeavor to collect the balance he claimed was due him and later commenced this action.

The foregoing facts tend to show an understanding, intention and course of conduct on the part of respondent consistent only with the existence of a pledge. When the absolute assignment to appellant of the Kuck mortgage and note as security for a loan to respondent and appellant's recognition of it as a pledge, by paying the difference between the amount loaned with interest and the amount paid on the Kuck note and mortgage; respondent's frequent inquiries of appellant as to whether or not the Haberer note had been paid; his frequent insistence that there was a balance due him from appellant and his endeavors to collect it; the previous negotiations for a larger loan for which the mortgages were to be given as security; the fact that the $200 loan from appellant was to be repaid on November 1, 1930, the day that the Haberer note became due; and the admission by appellant in the conversation last above quoted that there was money due respondent, are taken into consideration with the other facts disclosed by the evidence, we are satisfied there was sufficient clear and convincing competent evidence, notwithstanding the conflict therein, from which the jury could logically conclude, as it evidently did, that the assignment, though absolute in form, was in fact given by respondent and intended solely as collateral secu-

rity for the repayment of his loan, and that the transaction did not constitute a sale of the note and mortgage.

█ Appellant urges that the fact that no note was given and that no rate of interest on the loan was agreed upon between him and respondent conclusively establish that the transaction was a sale and not a pledge. Appellant informed respondent that a note would not be necessary. Further, it is held in *Bergen v. Johnson, supra:*

"The authorities heretofore referred to also hold that in cases of this kind it is not necessary that the debt be evidenced by a promise to pay in writing, and that an oral promise of the plaintiffs and acceptance on the part of the defendant that it was a debt and was to be repaid is sufficient; neither was it necessary for the plaintiffs to show that any particular rate of interest was agreed upon as these are matters which are implied from the debt."

See, also, C. S., sec. 2551, subd. 3.

██ The presumption is that the transaction between appellant and respondent remained the same from its inception, in the absence of modification thereof consented to by both parties. There is no evidence in the record that the transaction was later changed or modified by any act or conduct on the part of respondent from what it was originally. If the original transaction constituted a pledge, as found by the jury, no act on the part of appellant alone could convert it into an outright assignment. (*Bergen v. Johnson, supra.*)

█ The next seven assignments of error are predicated upon the action of the trial court in admitting evidence of a custom alleged to have existed at American Falls and in Power county that absolute assignments were made for the purpose of security and in the action of the trial court in denying appellant's motions to strike such evidence. Three witnesses were called and examined upon this point. One of the witnesses had had considerable experience in loaning money in Power county and testified that he knew of such custom prevailing in that city and county and that the custom was general among business people who loaned

money. Upon cross-examination by appellant's counsel this witness testified:

"Q.. What,—you say it is a custom here in Power County that where money is borrowed and the note and mortgage is put up as security that an absolute assignment is given of the note and mortgage. A. Yes, sir."

Like evidence was given by witness Cotant, an attorney engaged in the general practice, who testified that there may have been cases where it was not done "but my experience has been the other way." Witness Allen had been in the banking business about fifteen years and in the mercantile business about four years and testified that there was a general custom to take assignments, "in cases I know they were practically all taken, complete assignments," and that was the usual custom in the county as far as he knew. The evidence establishes the further fact that in dealing with respondent in connection with the Kuck note and mortgage, a like transaction, where an absolute assignment was made but for security only, upon payment of the note and mortgage by Kuck, appellant deducted the amount he had loaned to respondent, plus interest, and paid the balance to respondent. The inference is justifiable from the Kuck transaction that appellant had knowledge of the existence of such custom and would tend to show that the Haberer transaction was of a similar nature. The authorities are somewhat divided as to the qualifications of witnesses and the *quantum* of proof necessary to establish a custom such as is presented in the instant case. In 17 C. J. 525 it is stated:

"In order to render a witness competent to testify to the existence of a usage it must appear that he personally knows of it as a fact; he may testify from his own knowledge and experience or from information derived through the course of trade; all that is necessary is that he should have occupied such a position as to know of its existence as a fact."

We are inclined to the view that the witnesses were competent to testify.

The *quantum* of proof involves a more serious question. However, we have the uncontradicted evidence of three

disinterested witnesses of sufficiently broad experience in matters covered by the custom, testifying that such custom actually obtained. We have also the testimony relating to the Kuck note and mortgage, a similar transaction. Respondent offered to call an additional witness to further establish the existence of such custom but the trial court declined to hear further evidence for the reason, as stated by him, that he would consider it merely cumulative. While the evidence of the existence of the custom with which we are dealing may not be admissible or binding upon the party sought to be bound, without establishing his knowledge thereof, unless the custom is so notorious, universal and well established that such knowledge on his part will be conclusively presumed, here we have, we think, sufficient evidence that appellant had knowledge of the custom and applied it in the Kuck transaction, and in the absence of any evidence to the contrary, there would seem to be sufficient evidence that the custom was general and that both of the parties to the transaction here involved were aware of its existence and contracted with reference thereto.

We are not unmindful of the rule announced in *Ehlinger v. Washburn-Wilson Seed Co.*, 51 Ida. 17, 1 Pac. (2d) 188, and *Gramkow v. Farmers Cooperative Irr. Co.*, 47 Ida. 578, 277 Pac. 431, but the record before us does not present a consideration of that rule. The trial court did not err in admitting the evidence complained of or in refusing to strike it.

By his last assignment of error appellant urges that the trial court erred in refusing to permit him, over objection, to answer a question as to whether or not he borrowed the $200 that he furnished to respondent from the Citizens' Bank. The objection was sustained on the ground that it was immaterial. Appellant contends that if he borrowed the money from the Citizens' Bank it would be a strong circumstance in showing that the transaction was a sale and not a pledge, claiming it would be inconsistent for appellant to borrow money from a bank to lend to respondent but would be consistent with a sale. However, appellant was

permitted, over objection, to answer a question immediately following, to the effect that he did not have the money himself with which to purchase the Haberer paper, which would at least leave the inference that as he secured the money he must have borrowed it, and it could make no material difference whether he obtained it from a bank or elsewhere. The trial court did not err in sustaining the objection.

The judgment is affirmed. Costs awarded to respondent.

Lee, C. J., and Givens, Varian and Leeper, JJ., concur.