**Steven E. Chapin, Appellant, v. Peter Tampoorlos, Appellee.**

**Gen. No. 42,802.**

Heard in the third division of this court for the first district at the October term, 1943. Opinion filed February 14, 1945. Released for publication March 5, 1945.

RICHARD HILL, JR. and JOHN O. WAGNER, both of Chicago, for appellant.

CHARLES V. FALKENBERG and JOHN P. KLEIN, both of Chicago, for appellee.

MR. JUSTICE LUPE delivered the opinion of the court.

The plaintiff, Steven E. Chapin, had borrowed the sum of $5,000 from the defendant, Peter Tampoorlos, and had assigned to defendant an indebtedness in the sum of $3,400, secured by a chattel mortgage upon fixtures and equipment in the premises at 5846 West Madison street, Chicago. This $3,400 indebtedness was credited by the defendant against the $5,000 owed by the plaintiff, leaving a balance due the defendant of $1,600.

In June 1940, the defendant demanded payment of the $1,600 and negotiations followed between the parties pertaining to the purchase by defendant of a conditional sales contract owned by plaintiff. The conditional sales contract, dated December 21, 1939, had been entered into by plaintiff as seller, and Lillian Douvris and Coula A. Harrison as buyers, and pro-

vided for the sale of certain equipment and fixtures at 5846 West Madison street, Chicago, upon which there was a balance due of $3,600 payable in monthly instalments.

On September 18, 1940, plaintiff assigned the conditional sales contract to the defendant. This assignment by plaintiff was in writing upon the reverse side of the contract, and is as follows:

"Cicero, Spt. 18 1940.

"For Value Received, I hereby assign, transfer and set over all my right, title and interest in and to the within Conditional Sale Agreement and the goods and chattels described therein unto William Tampoorlos and Peter Tampoorlos, to the extent of $1,600.00. As and when said $1,600 is paid, the residue of the moneys due under this Agreement shall be paid to Steven E. Chapin and the agreement surrendered to him."

At the time the defendant executed a receipt dated September 18, 1940, which is as follows:

"Received from Steven E. Chapin Conditional Sales Agreement dated December 21, 1939, between Steven E. Chapin seller and Lillian Douvris and Coula Harrison buyers which is deposited with the First National Bank of Cicero for collection—when I receive the sum of $1,600.00 from the collections, said agreement and all of the residue of the moneys due thereunder shall be paid to Steven E. Chapin."

The buyers under the conditional sales contract failed to make payments on the balance of $3,600 or the interest due thereunder, and the defendant and William Tampoorlos on November 7, 1941, took possession of the chattels described in the conditional sales contract, and on November 10, 1941, sold to defendant Peter Tampoorlos the chattels described in the conditional sales contract (pursuant to power contained in the conditional sales agreement) for the sum of $1,800.

Prior and subsequent to the sale of November 10, 1941, the plaintiff testified, he made tenders to the defendant of the sum of $1,600 due from plaintiff to defendant, but such tenders were refused. The plaintiff thereupon instituted the present suit for a conversion by the defendant of the conditional sales contract on which there was due a balance of $3,600, together with exemplary damages. The trial court held that the written assignment signed by the plaintiff above set forth constituted the whole contract between the parties; that said assignment was not in legal effect a pledge; that thereby plaintiff parted with all interest in the conditional sales contract; and thereupon excluded all of the evidence of the plaintiff and instructed the jury to find the issues for the defendant. Judgment was entered upon this verdict and this appeal by the plaintiff followed.

The question presented is whether the agreement as evidenced by the two writings above set forth was a sale or a pledge as security for a loan. A sale is the transfer of property for a price in money. The transfer of the property in a thing sold from a seller to a buyer for a price is the essence of the transaction. And the transfer in order to constitute a sale must be a transfer of the general or absolute property with no further rights in the property reserved unto the seller.

A loan of money has been defined as an advancement of money upon a contract or stipulation, express or implied, to repay it at some future day. [*Brittin v. Freeman,* 17 N. J. Law (2 Har.) 191, 213.] A pledge is the lien created by the delivery of personal property by the owner to another upon an express or implied agreement that it shall be retained as a security for an existing or future debt. (*Corbett v. Underwood,* 83 Ill. 324.)

The question of whether the transfer of a chose in action is to be deemed a sale, or a pledge as

security for a loan, is one of intention to be determined by a consideration of the various provisions of the contract or transfer and the circumstances under which the transfer is made. (*Mercantile Trust Co. v. Kastor*, 273 Ill. 332; *Dorothy v. Commonwealth Commercial Co.*, 278 Ill. 629.)

In construing the agreement between the parties the two instruments executed on September 18, 1940 must be construed together. In the case of *Daly v. Spiller*, 222 Ill. 421, in passing on a similar situation, the court said (p. 424): "The initial question is, by the original transaction did Green pledge the policy of life insurance to Daly to secure his note, or was the transaction a sale of the policy to Daly, with a contract for its repurchase by Green.

"It appears that Green applied to Daly for a loan; that in connection with the matter three instruments were executed, which must be construed together in determining what the original contract was."

The evidence shows that on September 18, 1940, the plaintiff was indebted to the defendant in the sum of $1,600 and that no note or written evidence of such indebtedness had been executed. With such admitted indebtedness in being, we find the two instruments, one executed by the plaintiff and one by the defendant. The instrument signed by the plaintiff is in form an assignment of the conditional sales agreement and the goods and chattels described in the conditional sales contract, but the assignment is limited by the words "to the extent of $1,600," and by the further provision that "As and when said $1,600 is paid the residue of the amount due under this agreement shall be paid to Steven E. Chapin and the agreement surrendered to him." The receipt of the defendant for said conditional sales agreement provides that "when I receive the sum of $1,600 from the collection, said agreement and all the residue of the monies due thereunder shall be paid to Steven E. Chapin."

■ There is no mention in either of these instruments that the $1,600 debt of plaintiff is released and cancelled; upon the receipt by defendant of the said sum of $1,600 plaintiff was entitled to a return of the conditional sales contract; and all monies above $1,600 collected by the defendant were to be paid to the plaintiff by the defendant. Under these circumstances we cannot hold that these instruments assigned to the defendant an absolute title to the conditional sales contract and the personal property therein described with no further rights reserved unto the plaintiff. Upon the execution of the instruments, the plaintiff still had the undoubted right to repossess himself of said conditional sales contract and with it the rights in the chattels described therein upon the payment of the $1,600 indebtedness. As the amount of the conditional sales contract amounted to the sum of $3,600, the defendant only had a special property interest in said conditional sales contract and the chattels therein described to the extent of $1,600, and the general property in the same remained in the plaintiff, subject to the lien of the debt due to defendants.

In the case of *Rohrle v. Stidger,* 50 Cal. 207, Rohrle assigned to Stidger a note and mortgage signed by Strahle and Hughes, and Rohrle and Stidger entered into a contract in writing which set forth that Stidger had advanced to Rohrle $11,014.32 in payment of which Rohrle had sold him the note and mortgage, and that Stidger was willing that Rohrle should receive the benefit of any surplus the note might yield over and above the amount sufficient to reimburse Stidger, and that Stidger should be protected against any attachments or garnishments. The court in construing this agreement said (p. 210): ''The contract recited that Stidger was willing that Rohrle should receive the benefit of any surplus which the notes and mortgage might yield over and above the amount sufficient to reimburse Stidger for monies advanced for Rohrle. This amounts to a stipulation that the sur-

plus·should go to the benefit of Rohrle. By another clause of the contract the right of the creditors of Rohrle to attach the surplus in the hands of Stidger is recognized in term . . . . We think that the transfer by Rohrle to Stidger must be held to have been intended by the parties not as absolute in its character, but by way of security merely.''

In the case. of *Isaak v. Journey*, 52 Idaho 392, the plaintiff delivered to the defendant a promissory note for $800, given to him by another, and executed and delivered to the defendant an assignment of a chattel mortgage securing the note, receiving from the defendant the sum of $200. The court held that although the assignment was absolute in form that it might be shown that the transaction was a pledge and not a sale. With reference to the fact that no note was executed by the plaintiff and no rate of interest on the loan was agreed upon, the court held that such fact was not conclusive as to a sale but that such facts were entirely consistent with a pledge. The court reviewed the evidence and said (pp. 398, 399) : ''We are satisfied there was sufficient clear and convincing competent evidence, notwithstanding the conflict therein, from which the jury could logically conclude, as it evidently did, that the assignment, though absolute in form, was in fact given by respondent and intended solely as collateral security for the repayment of his loan, and that the transaction did not constitute a sale of the note and mortgage.''

It is shown by the evidence herein that the defendant was receiving a conditional sales contract on which there was a balance due of $3,600, at least $2,000 in excess of the indebtedness of plaintiff to the defendant; that plaintiff was to receive the excess received on said contract over and above the amount of the said $1,600; that upon payment of said $1,600 plaintiff was entitled to the return of the conditional sales agreement; that the plaintiff tendered the defendant

the $1,600 due to him and that defendant refused to accept the tender and refused to return the pledged contract; that at the time of the tender by plaintiff which was before the sale of the property by the defendant, defendant said he had a buyer for the place who would pay more than he and the plaintiff had coming and that plaintiff would get his money; that the defendant requested the plaintiff not to bid at the sale and promised that if plaintiff did not bid at the sale plaintiff would get his money; that after the sale he told the plaintiff that he had told his lawyer to give plaintiff his money; that the defendant purchased the property at his own sale and immediately resold same to a party whose name he refused to give, and that this purchaser immediately went into possession of same and conducted the restaurant as a going business; and that defendant admits that plaintiff came to his place and every time he came he always demanded the pledged property. When we consider the above facts together with other facts disclosed by the evidence, we are convinced that there was sufficient evidence introduced by the plaintiff to show that the instruments signed by the parties when construed together, evidence a pledge of the conditional sales contract and the chattels referred to therein. There was sufficient evidence introduced by which the jury might find that the assignment of the conditional sales contract was intended as collateral security for the repayment of the $1,600 due from plaintiff, and that the transaction did not constitute an absolute sale of the conditional sales contract and the chattels described therein. In holding as a matter of law that the transaction amounted to an absolute assignment of the conditional sales contract and property, and that plaintiff had no further interest therein, the trial court erred. It follows that the trial court further erred in instructing the jury to find the issues for the defendant, and in striking from the record the evidence

of plaintiff which tended to prove that the assignment was given as collateral security for the debt of plaintiff.

If the plaintiff made a tender to the defendant of the money due to the defendant and said tender was made prior to the date of the sale held by the defendant, then the sale held by the defendant was a conversion by defendant of the property of plaintiff. That question of fact should have been submitted to the jury for its verdict thereon.

The question of whether the acts of the defendant were unlawful and malicious was a question of fact for the jury. Where plaintiff claims exemplary damages as in this case, it is for the jury to determine from all the facts and circumstances whether malice is shown, and whether the case requires more than compensatory damages. (*Hemsteger v. Nelson,* 181 Ill. App. 377; *Davenport v. Ledger,* 80 Ill. 574.) If the jury should find that the taking by the defendant was malicious, the jury may give exemplary damages. (*Davenport v. Ledger,* 80 Ill. 574.) In cases where exemplary damages are recoverable, the pecuniary resources and financial condition of the defendant are elements for the jury to consider in estimating and assessing damages. (*Hinton v. Muhlman,* 201 Ill. App. 177; *Schmitt v. Kurrus,* 234 Ill. 578.) If the evidence offered by the plaintiff on a retrial of this cause establishes a malicious conversion by the defendant, then the jury may from a consideration of all the facts and circumstances adduced upon such retrial allow exemplary damages to the plaintiff.

The judgment of the circuit court will be reversed and the cause remanded to that court for a new trial.

*Reversed and remanded.*

Burke, P. J., and Kiley, J., concur.